[No. 31645. Department Two. October 4, 1951.]

R. M. GILLMORE, *Respondent*, v. RUTH HICKS GREEN, *Individually and as Executrix, Appellant.*[1]

[1]Reported in 235 P. (2d) 998.

*Bayley, Fite, Westberg & Goodin,* for appellant.

*Rummens, Griffin & Short* and *Paul R. Cressman,* for respondent.

WEAVER, J.—This is an action by a contract purchaser of real property for rescission of the contract, for a return of payments made thereon, and for the cost of improvements benefiting the property. Two grounds of rescission are urged: (1) The vendor failed to furnish title report and title policy, as agreed; and (2) the vendor did not have fee title to the property sold.

August 26, 1946, Mrs. Green (defendant and appellant) and her husband, now deceased, sold land upon real-estate contract, in which time was of the essence, to Mrs. G. M. Nadreau, a Seattle real-estate broker. Although her cause of action has been assigned to R. M. Gillmore, Mrs. Nadreau will be referred to as if she were the plaintiff and respondent.

The only written instrument executed by the Greens and Mrs. Nadreau was an earnest-money receipt. It was on a Seattle real-estate board printed form. The contract provided for a one-thousand-dollar down payment, and further payments of four thousand dollars on or before January 15, 1947, five thousand dollars on or before March 20, 1947, and the balance of fifty-five thousand dollars on or before May 25, 1948. The contract contained a typewritten provision relating to the release of "acreage" upon payment of

a certain sum per acre by the vendee. No demand was ever made for such a release.

The contract further provided that the Greens (vendors) would furnish a title policy or title report to Mrs. Nadreau (vendee) as soon as procurable or within ninety days from August 26, 1946. Thus the title report or policy should have been furnished on or before November 24, 1946. If the title was not insurable, and could not be made insurable within ninety days from date of the title report, the plaintiff (vendee) might rescind the contract, but "may waive defects and elect to purchase." It was further covenanted that: "There are no verbal or other agreements which modify or affect this contract." The complaint does not allege fraud.

On February 3, 1947, plaintiff (vendee) hired Mr. Harris, an engineer, who spent considerable time surveying and platting the property. He completed a plat for dedication of the property about July, 1947. For this, he was paid $2,804 by plaintiff.

Through correspondence with Mr. Green, plaintiff (vendee) was granted several extensions of time in which to pay two of the three remaining installments. The January payment was made February 15, 1947; the March payment was made partly on April 19, 1947, and partly on May 20, 1947. These payments were made *after* the title policy or title report should have been furnished.

May 10, 1947, Mr. Green died, a resident of California. Mrs. Green was appointed executrix of his will.

Plaintiff's complaint alleged the form and existence of the contract of August 26, 1946; that defendants had knowledge that plaintiff was purchasing the property for the purpose of platting it with the necessity of making a public dedication of roads, and that a plat had to be filed with the auditor of King county; that the Greens promised to furnish title report or insurance, and that further payments were made by plaintiff "in reliance upon said promise"; that no title information was ever furnished; that, in further reliance upon the promise to furnish title report

or insurance, the plaintiff expended thirty-five hundred dollars in platting the land and thereby improving it, but has now discovered that defendants were not the owners of the property but that it is owned by King county; that plaintiff has elected to rescind the contract and has duly filed a claim with defendant as executrix of Mr. Green's estate; and that the claim has been rejected. The prayer asked for cancellation of the contract, judgment for the ten thousand dollars paid, and judgment for thirty-five hundred dollars for improvements made to the property. By appropriate answer and affirmative defenses, defendant admitted receipt of the ten thousand dollars and prayed for a dismissal of the action.

The trial court entered its decree September 5, 1950. It provided that the property was not at any time owned by defendant, but was being purchased from King county upon contract; that plaintiff had no knowledge of this prior to making her payments; that decedent knew the property was to be platted and that a public dedication thereof required the signature of the record owner; that, while no policy of title insurance was ever delivered, that duty was waived by subsequent payments on the contract. The decree specifically stated:

"Finding that plaintiff has *not* sustained the burden of proof on right of rescission because of failure to deliver the title policy *or otherwise, and breached said contract in failure to make the final payment*; and . . .

"Concluding that in equity and good conscience under all the evidence, the record, the earnest money receipt and the written exhibits on file, and the fact that defendant has not in this action, or otherwise, sued for specific performance or actual damages, if any, and has not elected to declare a forfeiture,

"IT IS ORDERED, ADJUDGED AND DECREED that plaintiff be and hereby is granted a judgment against defendant, . . . in the sum of $10,000.00, . . . ; Provided, if defendant files in this cause, prior to the entry of judgment an election to forfeit said contract and retain the $1000.00 earnest money, the plaintiff be, and hereby is granted judgment against defendant, . . . in the sum of $9000.00, . . ." (Italics ours.)

From this decree the defendant, individually and as executrix, has appealed.

Mrs. Nadreau testified, and it is uncontradicted, that she was never supplied with a title report or policy for the property, and, in fact, had never seen one.

There is no contention by plaintiff, nor could there be, that she was not aware that the vendors had failed to furnish the title report on or before November 24, 1946. Although there was considerable correspondence between Mrs. Nadreau and Mr. Green prior to his death on May 10, 1947, concerning the extension of time of contract payments, not once was the title policy or report mentioned.

Had plaintiff rescinded the contract promptly upon the expiration of the ninety-day period in which the title report or policy was to be furnished, a different situation would have existed. At the end of this period she had only paid one thousand dollars down. She had not yet committed herself on the Harris contract. However, she elected to do otherwise, and made payments on the balance after the due date of the title report, with full knowledge of all material facts.

The acquiescence of plaintiff in nonperformance of defendants' duty to deliver title report constituted a waiver of the right to rescind the contract for its nondelivery. *Alhadeff v. Van Slyke,* 176 Wash. 244, 28 P. (2d) 797; *Nagel v. Edmonston,* 178 Wash. 577, 35 P. (2d) 64. In *Central Life Assurance Society v. Impelmans,* 13 Wn. (2d) 632, 647, 126 P. (2d) 757, we approved the rule, applicable in situations such as this, that:

" 'Any act on the part of the purchaser treating the contract as in force, when done voluntarily and with a knowledge of facts creating a right to rescind, amounts to a waiver of the right to rescind because of the existence of such facts. However, the acts evincing an intention to waive the right to rescind must be distinct and unequivocal, as, for example, by continuing negotiations after breach by the vendor on the basis of the continued existence of the contract; *or by making or promising to make payments of the purchase money thereunder;* . . .' " (Italics ours.)

Hence, plaintiff has waived her right to rescind the contract for defendants' failure to furnish a title report or policy.

On August 26, 1946, the date of the earnest-money receipt, defendants were not the record owners of the property. They were purchasing it from King county on a contract executed in 1945. At the time of trial, a balance of eight thousand dollars remained, although defendant had the right to pay the unpaid balance of the purchase price at any time. .Defendant testified that she was then, and had been at all times, ready, willing, and able to pay the balance of the King county contract and convey title to plaintiff upon payment of the purchase price. Plaintiff has not made a tender of the balance of the purchase price which is admittedly past due.

The record is not satisfactory as to when Mrs. Nadreau learned that defendants were not the record owners of the property. To our minds, however, it is immaterial, under the facts of this case, when, if ever, she learned that the Greens were purchasing the property from King county on contract. That fact, and the acquisition of knowledge of it, did not give plaintiff, as she urges, a right to rescind the contract.

■ The fact that the vendor in a contract for the sale of real property is not the owner of it at the time of making the contract, is not ground for rescission of the contract in the absence of a representation by the vendor, at the outset, as an inducement, that he, in fact, had such title. *Webb v. Stephenson,* 11 Wash. 342, 39 Pac. 952; *Morris v. Columbia Canal Co.,* 75 Wash. 483, 135 Pac. 238; *Finch v. Sprague,* 117 Wash. 650, 202 Pac. 257; *Henderson v. Miller,* 119 Wash. 362, 205 Pac. 1; *Hubbard v. Neubert,* 135 Wash. 381, 237 Pac. 718; *Sevigny v. O'Neill,* 154 Wash. 393, 282 Pac. 215; *Main v. Western Loan & Bldg. Co.,* 167 Wash. 1, 8 P. (2d) 281; *Townsend v. Rosenbaum,* 187 Wash. 372, 60 P. (2d) 251; *Erckenbrack v. Jenkins,* 33 Wn. (2d) 126, 204 P. (2d) 831.

■ The burden is upon plaintiff (vendee) to allege and prove that the vendor cannot perform when the time for performance arrives. This, plaintiff has not done. If a conveyance is promised on a day certain, and the vendor has, or can obtain, no title on the appointed day, the contract may be rescinded for a breach, and there may be a recovery of the purchase money paid without a further tender of the purchase price. *Sutthoff v. Maruca*, 57 Wash. 102, 106 Pac. 632. This, however, is not a case where the vendor has "put it without his power," by an act or omission, to convey when the time for performance arrives. Thus, the rule that the vendee need not tender the purchase price where "a tender would be an idle thing," has no application. *Parchen v. Rowley*, 196 Wash. 340, 82 P. (2d) 857. The failure of title that will warrant rescission is the failure of title at the time the contract is to be performed. 8 Thompson, Real Property (Perm. ed.), 579, § 4609.

■ Under the contract of August 26, 1946, the duty to pay the last installment, or the duty to pay for acreage to be released, should vendee demand it, and the duty of the vendor to convey, are concurrent, dependent, and mutual acts, and the vendee may not rescind the contract without a tender of the purchase price. We stated in *Eberhart v. Lind*, 173 Wash. 316, 319, 23 P. (2d) 17:

"It is a well-settled rule that a party in default can not maintain an action of rescission without first tendering performance, or showing a willingness to perform, or else clearly establishing such facts as would excuse performance by him."

And in *Crim v. Watson*, 196 Wash. 99, 101, 82 P. (2d) 172, we stated:

"The rule simply is that, after final payment is due upon a time contract for the sale of land, neither party can put the other in default without tender of performance." .

The vendee is in default. She has not tendered the last payment due under the contract. The vendors are not in default. Presumptively, from the record, the vendors

still have the right to demand specific performance. This being the case, the vendee cannot rescind the contract and claim restitution. *Litel v. Marsh,* 33 Wn. (2d) 441, 206 P. (2d) 300.

Plaintiff urges that her right to recover is supported by *Park v. McCoy,* 121 Wash. 189, 208 Pac. 1098. The *Park* case is distinguishable here for the same reasons we distinguished it in *Erckenbrack v. Jenkins, supra,* where we said:

"The real reason assigned for our opinion in the cited case [*Park v. McCoy*] was that the formal contract which was drawn subsequent to the earnest-money receipt *did not describe the same property* as was described in the earnest-money receipt. A further reason, as shown by the opinion, was that the earnest-money receipt contemplated that the appellant was the real owner of the property at all times in question." (Italics ours.) (p. 139.)

Plaintiff pleaded, and evidence was offered, that Mr. Green had knowledge of the fact that Mrs. Nadreau was purchasing the property in order to build a housing project, and that Mr. Green was to join in platting and dedicating the new addition. Defendant's counsel seasonably objected on the ground that such testimony would tend to prove a promise by Mr. Green that he would execute a dedication prior to the time set for conveyance, and that the parol evidence rule would thus be offended. This evidence was received, not for the purpose of varying the terms of the written contract, but for the sole and limited purpose of fixing the amount of recovery by plaintiff, in case she prevailed. Holding, as we do, that plaintiff is not entitled to recover, this evidence can have no bearing upon our decision.

The judgment is reversed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and HAMLEY, JJ., concur.

November 15, 1951. Petition for rehearing denied.