[No. 24675. Department One. January 23, 1934.]

NESSIM ALHADEFF et al., *Appellants,* v. R. M. VAN SLYKE, *Respondent.*[1]

[1]Reported in 28 P. (2d) 797.

*Ballard & Houghton* and *S. H. Kelleran,* for appellants.

*Howard O. Durk,* for respondent.

MILLARD, J.—The plaintiffs, as sellers, and S. H. Sussman, as purchaser, entered into a real estate contract November 14, 1930. The property covered by the agreement was an apartment house on the corner of Twentieth avenue and Pine street in the city of Seattle. The contract recited that the purchase price of the property was $32,439.62, of which $5,669.50 had been paid by the purchaser, who assumed the payment of a mortgage of $11,192.50 on the property. The purchaser agreed to pay the balance of $15,577.62, together with interest on unpaid installments at the rate of seven per cent per annum, in monthly installments of $125 or more, on the first of each month, commencing January 1, 1931. The contract contained the following time and forfeiture clause and provision relative to title insurance:

"Time is of the essence hereof, and in the event the purchaser shall fail to comply with or perform any condition or agreement hereof promptly at the time and in the manner herein required, the seller may elect to declare all of the purchaser's rights hereunder terminated, and upon his doing so, all payments made by the purchaser hereunder and all improvements placed upon the premises shall be forfeited to the seller as liquidated damages, and the seller shall have the right to re-enter and take possession of the property."

"The seller has delivered, or within ten days herefrom will procure and deliver, to the purchaser a title policy in usual form issued by a duly authorized title insurance company, insuring the purchaser to the full amount of said purchase price against loss or damage occasioned by reason of defect in, or incumbrance against, seller's title to the premises, not assumed by

the purchaser, or as to which the conveyance hereunder is not to be subject.''

The contract and warranty deed from the plaintiffs to Sussman and a quitclaim deed from Sussman to the plaintiffs were placed in escrow accompanied by a letter of instructions signed by the parties to the contract to the effect that, if Sussman failed to promptly make any of the payments when due, as required by the contract, the escrow holder would, upon demand, deliver the deeds and the contract to the plaintiffs.

On April 14, 1931, Sussman, who paid the installments for the months of January to April, inclusive, assigned his interest in the contract to defendant Van Slyke. The installment due June 1, 1931, was not paid by the defendant. At 10:00 a. m. the next day, June 2, 1931, plaintiffs notified the escrow holder in writing of the forfeiture of the contract because of non-payment of the June 1st installment, and withdrew all papers from escrow. On June 4th, the defendant tendered to the escrow holder payment of the June 1st installment. The defendant was then informed of the withdrawal of the papers from escrow, and the payment tendered was refused. The protest of defendant's representative to plaintiff Israel the same day was futile; the sellers insisted upon forfeiture of the contract.

Alleging that, under its terms, the contract was terminated June 2, 1931, and all payments made thereunder forfeited, plaintiffs instituted an action to quiet their title to the subject matter of the controversy and to recover rentals collected by defendant on June 1, 1931. By his cross-complaint, defendant sought recovery of the amounts paid to the plaintiffs under the contract. The cause was tried to the court—no find-

ings of fact were made—which awarded to the defendant recovery from the plaintiffs of $6,321.50. The court decreed that, upon payment of the judgment aforesaid, the title of the plaintiffs in the property in question be quieted. Plaintiffs have appealed.

Respondent's position is as follows: Prior to the attempted forfeiture of June 2nd, appellants accepted payment of overdue installments and expressly waived default in payment of insurance premium and the May 1st installment. Such indulgences, insists respondent, constituted waiver of strict performance of the contract, and forfeiture may not ·thereafter be claimed against the purchaser without notice of intention so to do, with allowance of a reasonable time for performance. In reliance on appellant Israel's statement that the balance due on the contract would be liberally discounted if paid in full, respondent departed from Seattle for Wenatchee on June 1st for the purpose of obtaining the money with which to pay the balance due and secure the discount promised. The non-compliance of appellants with the requirement of the contract that appellants furnish, within ten days after the execution of the contract, a policy of title insurance, was a default antedating respondent's default in payment of the June installment. Appellants, being in default at the time, will not be permitted to forfeit the contract for the respondent's default in payment of the June 1st installment.

We are committed to the rule that, where a vendor has waived strict performance of a contract, like that in the case at bar, by acceptance of payments thereunder after maturity, the forfeiture of the contract can not be claimed without notice and an opportunity given to perform. *Douglas v. Hanbury,* 56 Wash. 63, 104 Pac. 1110, 134 Am. St. 1096; *Reinertson v. Grant,* 140 Wash. 372, 249 Pac. 493; *Great Western*

*Investment Co. v. Anderson,* 162 Wash. 58, 297 Pac. 1087. However, where there has been a waiver of strict performance of the clause making time of the essence of the contract, such contractual provision may be restored to full force by the vendor's notices and warnings that the provision was not waived and that all future payments must be made in strict accordance with the terms of the contract. *Sleeper v. Bragdon,* 45 Wash. 562, 88 Pac. 1036; *Great Western Investment Co. v. Anderson,* 162 Wash. 58, 297 Pac. 1087.

The original vendee, Mr. Sussman, made four monthly payments. Of those four payments, Sussman was tardy as to only one—the April payment—which was made one day after the due date. The rights of the original vendee under the contract were acquired by respondent on April 14, 1931. That contract was declared forfeited on April 21, 1931, by the appellants, because of respondent's failure to pay an insurance premium of $37.80 which became delinquent on the preceding day. On May 1st, appellants agreed to waive the default upon repayment to them of the amount of the insurance premium they had paid. The May 1st installment was paid on Monday, May 4th. This delinquency was also waived by the appellants, who informed the respondent that the waiver of the two defaults was not to be construed as a waiver of any subsequent default, and that they would at all times insist on strict performance of the contract according to its terms. While acceptance of overdue installments waived any right to declare a forfeiture on account of the previous failures to pay when due, the appellants' acceptance did not change the terms of the contract as to forfeiture for future defaults. The only reasonable inference from the facts in this case is that the parties understood that the

conditions providing for forfeiture were to be treated as restored and in force.

It is clear from the evidence that appellants offered no inducement to respondent to go to Wenatchee to obtain the money with which to pay the balance due under the contract. On the afternoon of May 30th, when respondent's representative, Mr. Baker, informed appellants that the respondent would not be in Seattle on June 1st to make payment of the installment due on that date, that representative was informed that the appellants would not consent to a default on the contract; that, if respondent intended to leave the city, it would be necessary for him to arrange for the payment of that installment, otherwise the contract would be forfeited. It further appears from the evidence that respondent did not depart from Seattle until 10:00 p. m. June 1st. On that morning, he collected $160 in June rentals from the property covered by this contract, which was sufficient for the payment of the June installment; that is to say, the respondent had the money on the morning of June 1st with which to pay the June installment, and then knew that appellants would not consent to any delay in the payment.

The provision for delivery of the policy of title insurance within ten days after execution of the original contract was waived by respondent's assignor, who made the monthly payments regularly without demanding the title insurance. Five months after the execution of the contract, the interest of the original vendee was acquired by the respondent, who knew that title insurance had not been furnished. The respondent did not at any time insist that title insurance be furnished. The acquiescence of respondent and his assignor in non-performance of appellants with respect

to delivery of title insurance "within ten days herefrom" constituted a waiver of the right to have the policy of title insurance delivered within the time specified by the contract.

Having defaulted in payment without the acquiescence of the vendors, the respondent may not successfully insist upon recovery of the amount paid on the contract. *Lea v. Young,* 168 Wash. 496, 12 P. (2d) 601.

The agreement under which respondent held possession of the property was lawfully terminated on June 2, 1931, because of respondent's default in making the agreed payment. He was not entitled to the rents or income from the property thereafter.

The evidence is clear that the forfeiture provision was not waived. The respondent was repeatedly advised that he would be required to strictly perform all conditions of the contract according to its terms. In the face of numerous warnings of the result that would follow his failure to pay on time, respondent deliberately breached the contract and refused to pay the June 1st installment. At that time, he had the money—same had been collected by him from one of the tenants of the property in controversy—hence, there was no excuse for the default.

The appellants are entitled to the relief, as recited above, for which they pray; therefore, the judgment is reversed, and the cause is remanded with direction to the trial court to enter judgment accordingly.

BEALS, C. J., STEINERT, MAIN, and MITCHELL, JJ., concur.