[No. 26734. Department One. November 3, 1937.]

MAYFLOWER REALTY COMPANY, *Respondent,* v.
SECURITY SAVINGS & LOAN SOCIETY
*et al., Appellants.*[1]

*L. B. Donley,* for appellants.
*Hogan & Adams,* for respondent.

HOLCOMB, J.—This involves an action brought by
respondent as vendee, tried without a jury, against
appellant Security Savings & Loan Society, vendor,
and its successors in interest, following the federaliza-
tion of this society, to enjoin appellants from forfeit-
ing a contract, and to require appellants to accept

[1]Reported in 72 P. (2d) 1038, 75 P. (2d) 579.

Security Savings & Loan Society stock in payments on the contract at par value. The Security Savings & Loan Society will hereinafter be referred to as the "Society."

Appellant Society was the owner of a certain apartment house in Grays Harbor county, Washington, described as lot 4 in block 11, Weatherwax and Benn's Addition to Aberdeen.

One J. P. Standke had an option to purchase the property, and on April 25, 1933, the vendor entered into a land contract with Standke for the sale of this property. The consideration therefor was $12,100, of which $3,000 was paid upon the signing of the contract, the balance to be paid at the rate of $1,500, plus interest at six per cent per annum, on April 20th of each succeeding year until the balance due on this contract, with interest, had been paid in full. The contract also provided:

"Any of the above payments may be paid in shares of the Security Savings and Loan Society and shall be credited hereon at the par value thereof."

The contract provided further that time is of the essence and provided for forfeiture upon failure to make payments on principal, interest, and taxes pursuant to the terms of the contract.

On May 23, 1933, Standke assigned his interest in the contract to respondent. Payments were made on the contract in approximately the sum of five thousand dollars in savings and loan stock. Early in 1935, Friedlander, president of respondent corporation, called upon Goodbar Jones, president of the Society, and stated that he had learned that the Society was planning to federalize, and that he was prepared to pay off the balance due on the contract with Security Savings & Loan stock. A few days later, in April, 1935, Jones told Friedlander that only cash would

be received in payments on the contract. All installments maturing on the contract up to the time the bank was federalized had been seasonably paid by the vendee. Before the contract had been completely performed, the Society voluntarily federalized, thereby forming the First Federal Savings & Loan Association and the Monarch Corporation, and extinguishing the Security Savings & Loan Society stock. At the time the bank was federalized, respondent had paid the sum of $4,709 on the contract.

On July 30, 1935, a notice of forfeiture of the contract was given to respondent by appellant, First Federal Savings & Loan Association, by reason of an alleged overdue balance of $515 principal and $17.07 interest due on the installment of April 20, 1935. The notice of forfeiture gave respondents until August 15th to make the payments required under the terms of the contract. On or about August 8, 1935, Friedlander offered to pay the arrears in savings and loan stock, but the offer was refused by appellants.

In the answer and cross-complaint of appellants, the contract was alleged to be in arrears, and it was admitted a declaration of intention to demand a forfeiture had been made by reason of the breach of the contract in failing to make payments pursuant to the terms of the contract.

The court held the fair market value of the stock on April 20, 1935, was fifty cents on the dollar, and therefore respondent should have the right to liquidate the unpaid balance on the contract by payment to appellants of a sum of money equal to the market value of the shares, and that no interest should be paid after the date of tender.

A number of errors are assigned, but the only one that need be considered here is whether or not the

trial court erred in not declaring the contract forfeited.

We have repeatedly held that forfeitures are not favored in law and are not enforced in equity unless the right thereto is so clear as to permit of no denial. *Wallis v. Elliott,* 154 Wash. 625, 282 Pac. 928; *Deming v. Jones,* 173 Wash. 644, 24 P. (2d) 85; *Grosgebauer v. Schneider,* 177 Wash. 282, 31 P. (2d) 901.

The record indicates that the taxes were paid within the time designated in the notice of forfeiture, and hence the only ground on which the forfeiture could be declared is the failure of respondent to make payments on principal and interest pursuant to the terms of the contract.

After an examination of the contract and of the record, we are satisfied that the parties to the contract intended that the purchase price might be paid either in lawful money of the United States or in shares of the Security Savings & Loan Society. The testimony shows respondent tendered to the Society the full amount of the shares of stock of that institution necessary not only to pay the balance of the installment maturing April 20, 1935, but also the entire unpaid balance of the purchase price on the contract. The tender, however, was refused by the Society by reason of the federalizing of that institution. It is significant that the federalizing was occasioned by its own voluntary act.

It is well settled that, if the dissolution of a corporation is voluntary and it elects to take advantage of the option given it by law to terminate the existence of the corporation, the dissolution is due to its acts and the corporation remains liable upon its outstanding executory contracts. 5 Page on Contracts 4736, § 2691; 5 Page on Contracts 5135, § 2912; 2 Page on Contracts 1929, 1998, § 2912; *Tiffin Glass Co. v.*

*Stoehr*, 54 Ohio St. 157, 43 N. E. 279; *Suter v. Farmers' Fertilizer Co.*, 100 Ohio St. 403, 126 N. E. 304. The effect of this action to enjoin the declaration of a forfeiture is tantamount to an attempt to preclude a breach of contract on the part of the original vendor.

In *Chesapeake & O. R. Co. v. Dayton*, 177 Ky. 502, 197 S. W. 969, the court stated:

"It is an elementary principle in the law of contracts that when one of the parties voluntarily puts it out of his power to do what he agreed to do, he cannot, when it is sought to make him perform his contract, respond that the other party can have no relief because it is not practicable or possible to perform the contract according to its terms. *Poirier v. Gravel*, 88 Cal. 79; *Smith v. Jordan*, 13 Minn. 264; *Lovering v. Lovering*, 13 N. H. 513; Elliott on Contracts, vol. 3, sec. 2108; Bishop on Contracts, sec. 1426. When a situation like this arises the party who, by his voluntary act, has put it out of his power to fulfill the terms of the contract, may be compelled by appropriate action to either respond in damages for his breach or, if the other party is willing, may in a court of equity be compelled to perform the contract in some practicable way that will be satisfactory to the other party and at the same time will carry out the purpose and spirit of the contract."

"But where exact enforcement of the contract is impracticable, plaintiff may sometimes have approximate relief in some other form which will secure to him the substantial advantages of the contract, and where performance has been delayed or prevented by defendant so that relief conforming to the literal terms of the contract would be inequitable to plaintiff, or impossible, the relief need not so conform." 58 C. J. 1222, § 575.

"While, in accordance with general rules, the relief granted, in respect of the method or medium, and terms, of payment should, as far as possible, conform to the applicable provisions of the contract, defendant's prevention of performance in accordance with the terms of the contract, or impossibility of perform-

ance in accordance with the strict terms of the contract, because of lapse of time or other eventuality, may authorize or require a departure from the strict terms of the contract, although even where defendant vendor has improperly refused to convey, where the period of delayed payments provided for by the contract has expired, the court has declined to allow him a further period. The propriety of alternative provisions, and of a provision not more onerous than the terms of the contract, as to payment, has been recognized." 58 C. J. 1223, § 577.

"Where both alternatives are possible at the time of making the contract, and one of them subsequently becomes impossible, the question whether the other remains binding depends on the construction of the contract as to the intention of the parties under the circumstances." 13 C. J. 642, § 716.

Also, see 6 R. C. L. 715-6, § 376.

By the express terms of the contract, respondent secured a valuable right, namely, that payments on the contract could be made in the form of Security Savings & Loan Society stock, which may not be arbitrarily destroyed by the act of the vendor.

We find that the value of the shares of stock, as fixed by the trial court as of April 20, 1935, reflects the market value thereof as of the date of the tender. Since appellants rendered it impossible for respondent to pay in shares of stock of the Society, he is entitled to pay in money at the determined value of that stock.

Appellants cannot be heard to complain of the acceleration of the payments on the principal, since this must inevitably inure to their advantage; but since the contract expressly provided for interest payments at the rate of six per cent per annum, and since there is no acceleration clause present in the contract, appellants are entitled to collect interest at the rate of six per cent per annum during the term which the contract contemplates; that is, interest should be computed on the installment due on April 20, 1935, as of the date

of this payment, since the tender should have been accepted by appellant. Interest on the balance of the principal shall be computed as if fifteen hundred dollars were paid on the principal on April 20th of each year until the full purchase price had been paid. The entire balance due upon the contract, including both principal and interest, shall be paid within thirty days after the remittitur from this court is filed in the superior court.

Appellants cite a number of cases to the effect that it is not within the province of the court, in the absence of fraud, deceit or mistake, to rewrite contracts, but rather to interpret and enforce them as made by the parties themselves in accordance with their terms. While we are in accord with this rule, we do not find that the trial court violated this rule in its disposition of the case, except with respect to the question of interest.

The judgment of the trial court is therefore affirmed, as modified.

STEINERT, C. J., BLAKE, MAIN, and SIMPSON, JJ., concur.